Thomas C. Chimera, J.
These are proceedings to invalidate designating petitions in the respective districts mentioned. In view of the short time intervening between the commencement of this proceeding and primary election day and the necessity for preserving the rights of the parties hereto in the event of an *251 appeal, a plenary hearing has been held on the law and the facts. After such hearing and upon the report of the Special Referees appointed by the court with the consent of counsel, the court makes its findings and decides all the issues of law and fact.
On the law:
In each of the proceedings the motion of the respondents to dismiss the invalidating petitions on the ground that service of the papers was not made ‘1 upon any Commissioner of the Board of Elections in the City of New York, or upon the Chief Clerk or Deputy Clerk of said Board,” considered together with the challenge to the affidavits in that they allege that service was made on a clerk without naming said clerk, is denied.
It is the opinion of this court that service upon anyone in the Board of Elections charged with the duty of receiving these papers and clocking them, as was here proven, is a sufficient compliance with the direction of the court in all orders to show cause herein.
The respondents’ challenge to the affidavit of service in each of the invalidating petitions on the ground that the affidavit of service incorporated by reference the names and addresses of the persons allegedly served appearing within the caption of the papers, is also denied.
I know of no authority and none has been called to my attention leading me to the conclusion that an affidavit of service must, within the perimeter of the paper itself, set forth the names and addresses of the persons allegedly served.
In the opinion of this court it is sufficient if the affidavit refers to an attached document specifically reflecting the names and addresses incorporated by reference.
Respondents’ challenge to the proceedings to invalidate dealing with designating petitions in and for the Tenth Assembly District, specifically, to the capacity of petitioner Giamboi to bring the proceeding as a duly qualified objector is grounded on an error in reporting petitioner’s proper election district. The address given is conceded to be accurate and lies within the assembly district in question. The said Giamboi being otherwise qualified to bring the proceeding, the objection is not a valid one and this motion must be denied as well.
Respondents ’ challenge to the validity of all of the invalidating petitions on the ground that the several petitioners therein named were not qualified to bring proceedings in behalf of the county committeemen designees outside petitioners ’ own respective election districts, is denied, for the reason that the proceedings are not being brought by candidates aggrieved but by *252 persons who are qualified as objectors (Election Law, § 330, subd. 2).
It is settled that a qualified objector may bring an invalidating proceeding against all candidates within the entire assembly district in which the objector resides (Matter of Mahoney v. Lawley, 301 N. Y. 425).
Matter of Pearson v. Board of Elections (284 App. Div. 649), cited by respondents, is not in point, a different situation there obtaining. That was a case involving a candidate bringing a representative proceeding and it is settled that a candidate may not bring proceedings in behalf of himself and others not candidates in his own election district. (See authorities cited in Pearson, supra.)
Moreover, there is no validity to the argument of respondents’ counsel that if an objector is at the same time a candidate he may not bring a proceeding as an objector and must be limited to a proceeding as candidate aggrieved.
The respondents’ challenge to the accuracy of the allegations in the affidavits of service, treated as a challenge to the jurisdiction of this court and set down for hearing on traverse, is another matter however.
After hearing all of the testimony offered, this court is of the opinion that the petitioners have" not proven facts sufficient to warrant the conclusion that service by mail was effected on all of the respondents named or on any of them in particular.
If the sacredness of the elective franchise must remain inviolate then care must be taken to insure the right of defense to those whose candidacy may be challenged.
In a situation of this kind, where admittedly 40 or 50 people are involved, many sheets of paper are collated and many envelopes addressed, all of which operations were not performed by the affiant himself, nothing short of convincing proof that the affiant, alone or with others testifying, carefully supervised each operation of reading, conforming, collating, inserting and checking against lists proven to be accurate, will suffice for a ruling of compliance with service by mailing, as directed in the orders to show cause.
The testimony' of the witnesses Brennen and Ryder failed to establish the continuity of supervision and care above described. Actually, it established enough breaks in the chain of supervision to generate a substantial doubt in the court’s mind that any real compliance was attempted.
Accordingly, all of the above described proceedings are dismissed for lack of jurisdiction.

*253
On the facts:

First, Second, and Third Assembly Districts.

The case of Louis Lowenstein presents an interesting series of questions. It appears that Mr. Lowenstein left his “ mark ” on a total of at least 78 sheets of the respondents’ petitions in the First, Second and Third Assembly Districts. On 8 of these sheets although he is not the subscribing witness his initials appear on alterations clearly indicated. On 18 of these sheets the date 1959 indicating the year of last registration appears to have been altered to read 1958 and is admitted by Mr. Lowenstein to have been altered by him. On these alterations Mr. Lowenstein did not affix his initials. On 5 of these sheets there appear to be alterations with Mr. Lowenstein’s initials and a change in date from 1959 to 1958 admittedly made by Mr. Lowenstein but bearing no initials. The remainder of the total number of sheets indicate the presence of some writing on the part of Mr. Lowenstein in the date column, in the address column and in the E.D. column.
The contention of the petitioners is that all of these situations put together constitute a prima facie pattern of fraud wholly unexplained and that the failure on the part of respondents to produce subscribing witnesses who might have acknowledged the alterations as having been made before they signed the statements at the bottom of the sheets, conclusively proves the fraud.
Mr. Lowenstein, called by the petitioners, took the stand and was examined for many hours in great detail. The story he tells is that he was the man who made most of the insertions on the petition sheets where insertions had to be made and that he was under the impression that since he made the insertions he was the man who was required to initial the alterations.
He steadfastly maintained, however, that all of the alterations existed on the face of the petition sheets in question prior to the affixing of the subscribing witnesses’ signatures. While it is clear that it was not improper for Mr. Lowenstein to make these insertions prior to the subscribing'witnesses’ authentication by signature, Mr. Lowenstein certainly had no business initialling the changes in any event unless he himself were a subscribing witness or signatory to the petition in a given case. But the fact that he did affix his initials where the same are indicated shows an absence uf fraudulent intent and lends some credibility to his tale, at least insofar as the initialled changes are concerned. If his intent in this regard were fraudulent he might have forged the subscribing witnesses’ initials for instance.
*254 The question of the uninitialled alterations from 1 ‘ 1959 ’ ’ to “ 1958 ” cannot be easily excused. The absence of initials in this regard leads one strongly to suspect that the alterations were made by the hand of someone other than Mr. Lowenstein and that Mr. Lowenstein was trying to “ cover up ” defects which in the judgment of this court are fatal to the petition sheets so affected (see Matter of Dorsey v. Cohen, 268 N. Y. 620). Under the circumstances, all of those petition sheets bearing the obvious alteration from ‘ ‘ 1959 ” to “ 1958 ’ ’ without initials, must be stricken.
The sheets affected are the following: in respondents’ First Assembly District petition sheets 103 and 104; in the Second Assembly District sheets 1, 2, 18,19, 38, 39, 42, 50, 52, 53, 55, 76, 78, 79, 82, 83, 85, 86, 87, 91 and 92 must be stricken. A careful examination of the effects of the disposition thus made will indicate that the challenges of petitioners to all of the petition sheets allegedly procured by the subscribing witnesses Harry A. Weissberg, Max Stein and Michael De Euve are academic because all of those petition sheets have already been stricken. In view of this determination any other challenges to specific signatures or other irregularities affecting petition sheets already stricken also become academic and are not being considered in this decision.
Another ‘1 pattern of fraud ’ ’ suggested by petitioners, relates to a situation involving the same Mr. Lowenstein. The witness was asked to check through the entire Second Assembly District petition for a single sheet on which his handwriting appears in the date column and the dates differ, or, where his handwriting is commingled with the handwriting of others and the dates are similar or dissimilar. The suggestion in this line of inquiry is that the absence of diversity in dates on given petition sheets standing by itself is evidence of fraudulent dating. In the absence of other proof this claim is not impressive and must be disregarded.

Fifth Assembly District.

Petitioners move to strike out all sheets numbered 18 to 39, 49 and 50, 52, 56 to 69, 72, 73 and 76 to 82 on the ground that the signatures numbering 470 in all were procured on the same day, to wit, June 30,1959. From this the court is asked to rule that there is an apparent impossibility of performance and that the dates were fraudulently inserted.
It appears that the 470 signatures were obtained by 44 subscribing witnesses; that of the 44 subscribing witnesses one Aron H. G-reenberg procured 40 signatures. The question arises *255 whether it is possible for a man to procure 40 signatures on one day. An examination of the petition sheets affecting this subscribing witness would indicate that the 40 signatures were obtained in a reasonably small area. June 30, 1959, was the first day to procure signatures. In a contested primary it is not unusual for an organization to concentrate on the first day in an effort to avoid the loss of credit by priority. In the absence of any proof indicating otherwise that the dates were fraudulently affixed, this court cannot say that the performance indicated by these sheets is impossible and, therefore, the motion is denied in that respect.
Sixth Assembly District — Twenty-thircl Election District.
The Hall signature appearing on sheet 37, line 6 of respondents’ petition is ruled a forgery and is, therefore, stricken.
Sixth Assembly District — Thirtieth Election District.
The challenge to the signature of one Santana appearing on sheet number 46, line 2 of respondents’ petition must be overruled in the face of the proof which in the judgment of this court indicates that the subscribing witness was one of several persons soliciting signatures on the occasion in question.
Eighth Assembly District — Twentieth Election District.
The challenge to the entire sheet 37 of the respondents’ petition consisting of 10 signatures, on the ground that the signature of the subscribing witness does not appear to be genuine, is overruled. Anna Richards testified that the signature at the top of the subscribing witness’ statement is hers and that the one at the bottom does not look like hers. The court finds that the signatures in both instances are sufficiently similar and in the light of her testimony that all of the signatures were procured by her and that they were genuine, disallows this claim.
In addition to the foregoing, the following dispositions are made pursuant to the report of the Special Referees appointed by the court with the consent of the parties and the same is hereby confirmed:
The following entire sheets are invalidated: in 2d Assembly District, 59th Election District, sheet No. 77; in 3 A. D., 2 E. D., sheet No. 4, and 12 E. D., sheet No. 22, and 22 E. D., sheet Nos. 33 and 34, and 48 E. D., sheet No. 65, and 53 E. D., sheet No. 70, and 71 E. D., sheet No. 88, and 81 E. D., sheet No. 98; in 8 A. D., 16 E. D., sheet No. 32, and 17 E. D., sheet Nos. 33 and 34, and 18 E. D., sheet No. 35, and 19 E. D., sheet No. 36, and 22 E. D., sheet No. 41, and 42 E. D., sheet Nos. 75 and 76, and 45 E. D., sheet Nos.. 85 and 86, and 47 E. D., sheet No. 90, and 51 E. D., sheet No. 103, and 73 E. D., sheet No. 166, and 77 E. D., sheet No. 180; in 9 A. D., 1 E. D., sheet Nos. *256 1 and 2, and 2 E. D., sheet No. 4, and 6 E. D., sheet Nos. 9 and 10, and 7 E. D., sheet No. 11, and 9 E. D., sheet Nos. 14 and 15, and 11 E. D., sheet No. 16, and 16 E. D., sheet Nos. 18 and 19, and 19 E. D., sheet Nos. 22 and 23, and 65 E. D., sheet Nos. 103 and 104, and 69 E. D., sheet Nos. 112 and 114, and 70 E. D., sheet No. 115, and 74 E. D., sheet No. 123, and 94 E. D., sheet Nos. 163 and 164, and 95 E. D., sheet Nos. 165 and 166; in 10 A. D., 18 E. D., sheet Nos. 56 and 57; and in 12 A. D., 58 E. D., sheet No. 174. The following persons are stricken as candidates for county committee: Velia Fungi on sheet No. 66, 35 E. D., 1 A. D.; Alexander Bregoff on sheet No. 51, 37 E. D., 2 A. D.; Wm. F. Staedelia on sheet No. 35, 12 E. D., 10 A. D.; Gertrude Cunningham on sheet Nos. 1, 2, 3, 4, 1 E. D., 10 A. D.; John Pfoser on sheet Nos. 9 and 10, 3 E. D., 10 A. D.; Emanuel Strauss on sheet Nos. 229 and 230, 85 E. D., 12 A. D.; Thomas F. Davis, Jr., and Fred Fink on sheet Nos. 5, 6, 7, 8, 2 E. D., 10 A. D.; and Samuel Hirshowitz and Lillian Hirshowitz on sheet Nos. 231 and 232, 86 E. D., 12 A. D.
The Board of Elections is directed to implement the foregoing findings, bnt only in the event the appellate courts so direct.